The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

John Jay **McKIBBEN**, Defendant–Appellant.

No. 91CA1787.

Colorado Court of Appeals, Div. V.

April 22, 1993.

Rehearing Denied June 10, 1993.

Certiorari Denied Nov. 29, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eric V. Field, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, John Jay McKibben, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree sexual assault. We affirm.

The charge at issue here arose from an incident in which defendant engaged in sexual intercourse with a 16–year–old boy. The prosecution asserted that the defendant, in violation of § 18–3–403(1)(a), C.R.S. (1986 Repl.Vol. 8B), had caused the victim to submit by a means of sufficient consequence, reasonably calculated to cause submission against the victim's will. The defendant claimed that the victim had consented to the sexual act.

Before trial, the prosecution filed a notice of intent to offer similar act evidence, and at a hearing thereon, the prosecutor made an offer of proof regarding the similar transactions. The offer of proof consisted of the testimony of two boys who had been befriended by the defendant. The defendant had taken them to movies, out to meals, and had given them jobs. Each was taken to the defendant's apartment, where the defendant discussed homosexual acts with them and then asked the boys for sex. In addition, the defendant offered the boys money for sexual favors. One boy submitted to defendant's importuning; the other did not.

The trial court found that the evidence was admissible to show common plan, scheme, design, *modus operandi*, guilty knowledge, or intent and that the probative value of the similar transaction evidence substantially outweighed the danger of unfair prejudice.

## I.

On appeal, the defendant contends that the trial court erred in admitting the similar transaction evidence. He maintains that the evidence was not logically relevant independent of the intermediate inference prohibited by CRE 404(b) and § 16–10–301, C.R.S. (1992 Cum.Supp.), was not sufficiently similar to the incident at issue, and was highly prejudicial. We disagree.

Evidence of prior similar transactions in cases involving sexual assault is admissible under § 16–10–301(1), C.R.S. (1992 Cum.Supp.) and CRE 404(b), if it is offered for the limited purpose of establishing a common plan, scheme, design, identity, *modus operandi*, motive, guilty knowledge, or intent. However, to be admissible, such evidence must meet the following four-part test: (1) the evidence must relate to a material fact in the case; (2) it must be

logically relevant to the material fact; (3) the logical relevance must be independent of the prohibited inference that the defendant committed the crime charged because of his criminal propensities; and (4) the probative value of the evidence substantially must outweigh the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

■ The trial court has substantial discretion in deciding the admissibility of evidence of similar transactions, and only if there is an abuse of discretion will its ruling be disturbed. *People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

### A.

■ Relevant evidence is defined in CRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *People v. Carlson*, 712 P.2d 1018 (Colo.1986). In resolving an issue of relevancy, a court must consider whether the proffered evidence is legally material to some factual issue in the case. *People v. District Court*, 785 P.2d 141 (Colo.1990).

■ Here, the similar transaction evidence was legally material to a factual issue in the case. The critical issue in this case was whether the victim consented to the sexual act or whether the victim submitted to the act by any means of sufficient consequence reasonably calculated to cause submission against his will. *See* § 18–3–403(1)(a), C.R.S. (1986 Repl.Vol. 8B).

"Consent" means cooperation in the act or an attitude pursuant to an exercise of free will and with knowledge of the nature of the act. Submission under the influence of fear shall not constitute consent. Section 18–3–401(1.5), C.R.S. (1992 Cum.Supp.).

The proffered evidence indicated that, on at least two prior occasions, the defendant had befriended young teenage boys, developed their trust, given them money and a job, and then had attempted to take advantage of their vulnerable state. One of the boys submitted to the sexual act under the influence of fear—fear that the defendant would no longer be his friend or give him money. The boy who did not submit to the defendant's advances considered taking the proffered money because his father was in bankruptcy. Hence, the evidence established submission by any means reasonably calculated to cause submission against the victim's will and, thus, negates the consent theory.

Furthermore, the proffered evidence was material to the consent issue and thus does not give rise to the prohibited inference that defendant committed the crime charged because of his criminal propensities. *See People v. Spoto, supra.*

### B.

■ As to whether the other incidents were sufficiently similar to the one at issue, the record before us unequivocally establishes a compelling pattern and remarkable similarity of defendant's sexual misconduct. The boys were all young teenage boys, befriended by the defendant who had attempted to sexually assault them. The assaults or attempted assaults occurred while the boys were at the defendant's apartment or condominium. Finally, the methodology employed by the defendant was similar in each case. *See People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979).

■ Although there obviously were some differences in the circumstances surrounding each offense, it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed. *People v. Garner*, 806 P.2d 366 (Colo.1991). Moreover, *modus operandi* evidence is not limited to evidence of identity. *See Adrian v. People*, 770 P.2d 1243 (Colo.1989).

Hence, the evidence was legally material to a factual issue in the case, was sufficiently similar, and was independent of the intermediate inference that the defendant has a bad character and acted in conformity therewith. We reject defendant's contention that evidence of prior acts is never

admissible when, as here, the defense of consent is raised. Defendant has not provided any authority, nor are we aware of any, to support this proposition.

### C.

■ Finally, as to the prejudicial nature of the evidence, we are well aware that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. Lowe*, 660 P.2d 1261 (Colo.1983); CRE 403. However, such is not the case here.

■ In exercising its discretion to admit or exclude evidence because of its asserted prejudicial impact, the trial court should consider the nature of the case, the nature of the tendered evidence, and the other evidence admitted during trial. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984).

All effective evidence is prejudicial in the sense of being damaging or detrimental to the party against whom it is offered. However, unfair prejudice refers only to evidence which tends to cause a decision to be made on an improper basis. *People v. District Court, supra.*

There is no basis in the record for us to conclude that the evidence in this case excited the emotions of the jury to irrational behavior.

Moreover, the trial court properly instructed the jury at the time the evidence was admitted at trial and again in the general charge to the jury. The jury instructions tracked the language of *COLJI–Crim.* Nos. 2:02 and 4:02 (1983). The limiting instruction properly informed the jury that the purpose for which the evidence could be used was to show a common plan, scheme, or design, *modus operandi*, motive, and intent. By so instructing the jury, the court in effect informed the jury not to consider the evidence to show the defendant's bad character or his propensity to commit crime.

■ Absent a showing to the contrary, which has not been established here, it is presumed that the jury understood and heeded the instruction. *People v. Moody*, 676 P.2d 691 (Colo.1984).

Based on the record before us, we conclude that the trial court did not abuse its discretion in admitting the similar transaction evidence.

### II.

We also reject defendant's contention that the trial court employed the wrong standard in determining the admissibility of the similar transaction evidence. Even assuming that the trial court employed an incorrect standard, because the evidence was admissible and the foundational requirements for its admission were met, defendant's conviction will not be overturned. *People v. Jenkins*, 768 P.2d 727 (Colo.App. 1988).

■ Further, we conclude that any error occasioned in the cross-examination of the prosecution's expert witness was invited error. The witness responded within the scope of defense counsel's question. Hence, defendant cannot now seek reversal because of that response. *See People v. Zapata*, 759 P.2d 754 (Colo.App.1988), *aff'd*, 779 P.2d 1307 (Colo.1989).

Accordingly, the judgment is affirmed.

RULAND, J., concurs.

BRIGGS, J., dissents.

Judge BRIGGS, dissenting.

I respectfully dissent.

The alleged victim, A.M., was a sixteen-year-old youth when he was introduced to the defendant, a man in his forties. They became friends and defendant took A.M. on social outings, such as movies, horse-back riding, and lunch. Each time defendant paid the expenses. On some occasions they were by themselves and on others they were with a group of other boys about the same age as A.M. Defendant also paid their expenses.

During the summer, A.M. began to work for defendant in his business producing a high school sports magazine. Over Labor Day weekend, A.M. accepted defendant's

invitation to accompany him to a mountain resort on a "working vacation."

The first evening there A.M. consumed several alcoholic drinks provided by defendant. While in their hotel room, defendant began telling A.M. about his bisexuality and, eventually, that he wanted "to have sex." A.M. testified he refused, and shortly thereafter got up from his bed because he was feeling sick from the alcohol he consumed. He bent over and somehow found himself on the ground on his stomach with defendant on top of him. According to A.M., when defendant began to pull A.M.'s pants down he told the defendant to stop and tried to get out from under him, but was unable because he was being held down by the defendant's body weight. Defendant had anal intercourse with A.M., who testified he then passed-out and woke up a short time afterwards in the same place on the floor.

At trial A.M. admitted that he continued to socialize with defendant after the Labor Day trip and did not report the alleged rape to the police until several months later. He also admitted that he had initially reported to the police and had testified at the preliminary hearing that he had passed out before defendant engaged in anal intercourse with him. On yet another occasion, he had claimed that defendant had thrown him against a wall, knocked him to the ground, then held him down while having anal intercourse with him. A.M. also admitted at trial that he had told the police he never socialized with the defendant.

At the time A.M. reported the first incident he also reported a second incident which occurred in December. He told the police he again had not consented and that defendant had grabbed him from behind, pushed him into a wall so hard that he lost his breath, and then thrown him onto the ground and raped him. At trial A.M. admitted he later changed his story to the police and that on this occasion he had consented to have anal intercourse with the defendant after defendant had offered to pay him some of the money defendant owed him.

In January, a dispute erupted between defendant and A.M. over the money A.M. asserted defendant owed him. A.M. then reported the two alleged rapes to a school counselor who contacted the police. A co-worker with A.M. testified that, in February, A.M. told him that if the defendant would pay him the money he owed him he would "drop the charges." Shortly after the Labor Day incident, A.M. had told the same counselor the defendant was a good person, he liked working for him, and that he wanted to move out of his parents' house. The counselor corroborated this testimony.

It was defendant's theory of the case that the Labor Day incident was merely one consensual incident among others that had been occurring in their homosexual relationship since June. Defense counsel attempted to prove this by impeaching the victim based upon his conflicting reports to the police; the improbability that defendant could have perpetrated the forced nature of the act testified to because he only had one arm with a prosthesis in place of the other; and by showing motive and bias to fabricate testimony based upon the outstanding debt which defendant had not paid and A.M.'s asserted fear that others, especially his devoutly Christian parents, would persecute him if it was discovered he was involved in a homosexual relationship with defendant.

Prior to trial, the People filed a notice of intent to introduce similar transaction evidence under § 16–10–301(1), C.R.S. (1992 Cum.Supp.). Defendant contested the admissibility of this evidence and a hearing was held at which the other two witnesses testified.

The first witness testified he had met the defendant about fourteen years previously, when he was sixteen years old. He had been playing foosball at an arcade defendant once owned and desired to play on defendant's foosball team. Shortly thereafter defendant hired the witness to work at the arcade.

Defendant also took this witness out for meals and movies, usually with groups of other boys his age, and always paid. One

day at the defendant's residence defendant confessed to the witness that he was bisexual. He suggested that they have sex. The witness refused.

He continued to work for the defendant, who on other occasions suggested that they have sex. The witness testified it was clear that the defendant was suggesting he would only perform oral sex on the witness and that defendant would give him money if he complied. Each time the witness did not accept. At some later time, the defendant told him he would not be able to play on the foosball team, and it was clear to the witness that this was because he refused to have sex.

After their relationship had discontinued for about eighteen months, defendant contacted the witness and again asked him to have sex. The witness refused and filed a report with the local police.

The second witness testified that he also met defendant at his arcade about nine years previously, when he too was approximately sixteen years old. During this period he was competing to play on defendant's foosball team. He and defendant also socialized, going to meals and movies, either alone or with groups of other boys, and at defendant's expense on each occasion. While alone at defendant's apartment, defendant discussed at length his prior sexual involvements with boys. Defendant asked the witness if he could give him a back rub, but the witness declined. Two weeks later defendant told this witness that if he were "not nice" to the defendant he would not be allowed to play in an up-coming foosball tournament.

Defendant raised the subject again on a night when he and the witness were going to a movie and stopped by defendant's apartment. Once again defendant asked the witness to lie down on the bed so that he could give him a back rub. The witness testified he agreed out of fear that defendant would physically harm him if he did not.

The defendant unbuttoned the witness' pants, pulled them down, and had anal intercourse, despite the witness' repeated demands that the defendant not do so. The witness testified that defendant held him down with his body weight. The witness managed eventually to free himself and leave the apartment. He also testified that the defendant propositioned him with money on a later occasion, but he did not accept.

## I.

The People filed a motion to admit evidence of the two prior occurrences under § 16–10–301(1). That statute was enacted to change the common law by allowing evidence of prior conduct not only with the present victim but also with third parties if the similar acts or transactions are probative of one of the permitted limited purposes. *See Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979).

Evidence of prior similar transactions in cases involving second degree sexual assault is admissible under § 16–10–301 and CRE 404(b), if it is offered for the limited purpose of establishing a common plan, scheme, design, identity, *modus operandi*, motive, guilty knowledge, or intent. Evidence of other acts is not admissible to prove the character of the accused in order to show that he acted in conformity with that character on a particular occasion. CRE 404(b); *see Adrian v. People*, 770 P.2d 1243 (Colo.1989). The prohibition derives from the basic criminal law precept that a person may not be convicted of a crime by proof that he is guilty of another. *See Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). The genesis of this precept is the due process right to a trial that is fundamentally fair. *See Spencer v. State of Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

As recognized in the majority opinion, similar transaction evidence must meet the four-part relevance test articulated in *People v. Spoto*, 795 P.2d 1314 (Colo.1990). This test includes the requirements that the logical relevance be independent of the prohibited inference that the defendant committed the crime charged because of the likelihood that he or she acted in conformity with a bad character and that the

probative value of the evidence substantially outweigh the danger of unfair prejudice.

Here, the trial court admitted the evidence for the limited purposes of showing 1) intent; 2) motive; 3) a common plan, scheme or design; and 4) *modus operandi.* Although evidence may be admitted for more than one of these purposes, each must be separately analyzed to determine if it was in controversy at trial and, if so, whether the evidence was relevant to establish that purpose independent of the prohibited inference. *See People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979).

### A. *Intent*

A conviction for second degree sexual assault under § 18–3–403(1)(a), C.R.S. (1986 Repl.Vol. 8B) requires that the actor knowingly inflict sexual penetration or intrusion and cause submission of the victim by means other than those included in the crime of first degree sexual assault but of sufficient consequence reasonably calculated to cause submission against the victim's will. "[T]he actor must be aware that his conduct is sufficient in character and degree to be likely to cause nonconsensual submission." *People v. Smith,* 638 P.2d 1, 5 (1981) (fn. 7); *People v. Derrera,* 667 P.2d 1363 (Colo.1983).

Here, there is no claim of confusion or mistake in committing the act. *See People v. Cowan,* 813 P.2d 810 (Colo.App.1991).

> Where the charge is of *rape,* the doing of the act being disputed, it is perhaps still theoretically possible that the intent should be in issue; but practically, if the act is proved, there can be no real question as to intent; and therefore the intent principle has no necessary application.

2 J. Wigmore, *Evidence* § 57 at 334 (Chadbourn rev. ed.1979).

Defendant did not contest his intent to have anal intercourse with A.M. Defendant's theory is simply that A.M. is lying about being forced to engage in the act. If A.M.'s version is believed, the defendant's state of mind can be inferred from the act itself. If defendant's theory of the case is believed, there were no acts committed from which the jury could infer physical force or threats were used. *See People v. Key,* 153 Cal.App.3d 888, 203 Cal.Rptr. 144 (1984); *cf. People v. Honey, supra; People v. Guilbeaux,* 761 P.2d 255 (Colo.App.1988). Thus, the evidence of prior acts was irrelevant to establish intent aside from the prohibited inference that defendant acted in conformity with a bad character. *See State v. Saltarelli,* 98 Wash.2d 358, 655 P.2d 697 (1982); E. Imwinkelried, *Uncharged Misconduct Evidence* § 5.10 (1984).

There is no separate exception to the general rule prohibiting evidence of prior acts which makes such evidence admissible to prove the alleged victim's lack of consent. The fact that one victim may have been raped has no tendency aside from inferences about defendant's bad character to prove that another victim did not consent. *See Jenkins v. State,* 474 N.E.2d 84 (Ind.1985); *State v. Saltarelli, supra; People v. Key, supra;* E. Imwinkelried, *supra,* § 6.03 at 6–5 (use of a prior rape to prove lack of consent to a later charge of rape violates the prohibition in Rule 404(b)).

Intent therefore does not provide a basis for the admission of evidence of prior similar acts.

### B. *Motive*

Motive is an intermediate, evidentiary fact from which an inference can be made about an element of the crime, such as such as identity or intent, which is at issue. *See* E. Imwinkelried, *supra,* § 3.15. Here, however, identity was not at issue, and the crime was one of general intent inferable from the act. The Washington Supreme Court addressed the same claim that evidence of a prior rape was relevant to establish motive in *State v. Saltarelli, supra,* at 700:

> 'Motive' was not defined for the jury but we have defined the word to mean '[a]n inducement, or that which leads or tempts the mind to indulge a criminal act'. . . . It is by no means clear how an assault on a woman could be a motive or inducement for defendant's rape of a different woman almost 5 years later. No

explanation of the logical relevance of the evidence to motive was offered by the trial court, the Court of Appeals, or the State, in its argument to this court. In the absence of such an explanation, the evidence seems to achieve no more than to show a general propensity to rape, precisely forbidden by ER 404(b).

The evidence once again had no tendency to prove motive aside from the prohibited inference that defendant acted in conformity with his bad character, and motive was itself irrelevant aside from the same prohibited inference. *See* E. Imwinkelried, *supra*, § 3:15.

### C. *Common plan, scheme or design*

In order for two or more acts to constitute a scheme or design, they must have a nexus or relationship with each other from which a continuous scheme or a common design can be discerned. *See People v. Crespin*, 631 P.2d 1144 (Colo.App.1981).

The expansion of this exception to the prohibition on admission of evidence of prior similar acts has been criticized on the basis that the exception over time has swallowed the rule. *See People v. Tassell*, 36 Cal.3d 77, 201 Cal.Rptr. 567, 679 P.2d 1 (1984). To be an appropriate basis for the admission of evidence of prior acts, the acts must be such that they are naturally explained as the individual manifestations of one general plan. *See People v. Honey*, *supra*.

Here, defendant's actions in befriending A.M., spending money on him, inviting him on the trip and buying him alcohol might arguably be part of a common plan. In contrast, in light of the lapse in time between this and the other occurrences and the lack of continuity or connection, the actions of the defendant toward these three individuals cannot reasonably be considered part of a common plan, scheme, or design. *See People v. Honey, supra; People v. Guilbeaux, supra.*

Further, a common plan, scheme, or design is relevant in those circumstances when motive, identity, or intent are at issue. *See McCormick on Evidence* § 190 (E. Cleary 2d ed.1972); E. Imwinkelried, *supra*, § 3.20. Because identity was not at issue and the evidence is relevant as to motive or intent only to the extent it supports the prohibited inference, proof of a common plan, scheme, or design could not provide a basis for admission of the evidence. *See People v. Tassell, supra.*

### D. *Modus operandi*

*Modus operandi* is often confused with common plan, scheme, or design but is conceptually distinguishable. Evidence of a common plan may include two crimes which are dissimilar but because they are naturally part of a common plan may show the motive, intent, or identity of the actor. In contrast, *modus operandi* is typically relevant to establish identity and refers to crimes manifesting such significantly distinctive features that they make it more likely than it would be without the other-crime evidence that the person who committed the other crimes also committed the offense charged. *See People v. Garner*, 806 P.2d 366 (Colo.1991); *McCormick on Evidence, supra*, § 190. The methods used in the commission of the acts being compared must be both similar to each other *and* dissimilar from the methods generally used in such an offense. *See People v. Honey, supra.*

Here, identity was not at issue. To the extent it can be argued that *modus operandi* was somehow relevant to establish intent, the relevance is again limited to supporting the prohibited inference that defendant acted in conformity with a bad character.

Moreover, while there was similarity in the three acts in defendant's desire to have sex and even to use inducement to obtain it, there was no distinctive pattern in regard to intent to commit the crime of sexual assault. In one incident, after the witness had repeatedly refused offers of money for sex, defendant sought to induce the witness to change his mind by implying that unless he consented he would not be able to play on the foosball team. However despicable such conduct may seem, it does not support even the prohibited infer-

ence that defendant had a propensity to commit sexual assault.

*Modus operandi* therefore could not provide a basis for introduction of evidence of defendant's prior interactions with the two witnesses.

### E. *Prejudice*

Even if the evidence of these two prior acts had some relevance independent of the prohibited inference that defendant committed the crime because he acted in conformance with a bad character, the probative value was at best slight. In contrast, the prejudicial effect was extreme.

Rape cases from other courts which have admitted evidence of prior rapes have lacked "any analysis of the issue and do little more than pay lip service to the great potential for prejudice inherent in evidence of prior sexual offenses. They have been criticized as using motive and intent as 'magic passwords whose mere incantation will open with the courtroom doors to whatever evidence may be offered in their names.'" *State v. Saltarelli, supra,* at 700. It is in these cases that adherence to our statutory and evidentiary rules is most critical.

> When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse.

Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L.Rev. 325, 334 (1956).

Given the inflammatory nature of the evidence of the prior acts, any slight probative value was substantially outweighed by its danger for unfair prejudice. Thus, the evidence should have been excluded. *See* CRE 403; *People v. Spoto, supra.*

### II.

The error in admitting the evidence of prior acts was not harmless. The People's case rested entirely on the credibility of A.M.'s testimony. That credibility was substantially impeached at trial. There was circumstantial evidence rebutting the claim of lack of consent. In addition, the prosecutor's closing argument, especially in rebuttal, drew attention to the prior act testimony. It addressed that testimony in general terms and made no mention of the limited purpose for which it should be considered. Near the end of the rebuttal, the prosecutor alluded to one of the prior act witness' statement that defendant was never going to have the opportunity to rape him again.

Because credibility was the determinative factor it was critical that the jury be carefully protected from all irrelevant evidence which would reflect unfavorably on defendant's general moral character. *See Jenkins v. State, supra.* Under these circumstances, the error was not harmless. *See Merritt v. People,* 842 P.2d 162 (Colo. 1992).

### III.

Our society should not tolerate either sexual exploitation of children or sexual assault. However, our courts must be vigilant to protect the rights not just of the young or weak, but also of a member of our society charged with a vile crime who others might vilify regardless of whether he committed the crime charged. In this case, inconsistent statements and circumstantial evidence cast doubt on the claim of lack of consent. The possibility that the jury nevertheless convicted defendant because of his character was unduly increased by the introduction of irrelevant and highly prejudicial evidence. Accordingly, I would reverse and remand for a new trial.