The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James David DELGADO, Jr.,
Defendant–Appellant.

No. 92CA1875.

Colorado Court of Appeals,
Div. IV.

June 2, 1994.

Rehearing Denied July 14, 1994.

Certiorari Denied March 13, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clement P. Engle, Sr. Asst. Atty. Gen., Denver, for plaintiff-appellee.

Russell S. Ray, Boulder, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, James David Delgado, Jr., appeals the judgments of conviction entered upon jury verdicts finding him guilty of two counts of first degree sexual assault, one count of violent crime, one·count of second degree assault, and five counts of habitual criminal. We affirm.

### I.

■ Defendant first contends that the trial court erred in admitting evidence of a prior similar act because the evidence was not relevant independent of an impermissible inference that defendant acted in conformity with a bad character. He further asserts that even if the evidence was relevant, its prejudicial effect substantially outweighed any probative value. We disagree with both contentions.

Defendant was charged with two counts of first degree sexual assault. The jury was instructed as to the elements of the crimes charged, consistent with § 18–3–402, C.R.S. (1993 Cum.Supp.) and *COLJI–Crim.* No. 12:01 (1993 Supp.). The first count was premised on the use of actual force or violence, the second on the use of threats.

Defendant admitted engaging in sexual acts with the victim, and his intent to do so. The primary issue in dispute at trial was whether defendant used force or the threat of force to cause the victim to submit to sexual acts. The theory of defense was that the victim was lying about the use of the knife and that defendant made no statements and took no actions that could have caused the victim's submission.

In a pretrial hearing, the prosecutor sought permission to introduce evidence at trial that the defendant had previously assaulted another woman. The evidence was offered for the limited purposes of showing "knowledge, plan, scheme or design, lack of consent, modus operandi, and identity."

By way of offer of proof, the prosecutor demonstrated the similarities of the two assaults. In each, the defendant cruised Colfax Avenue near downtown Denver late at night until he spotted a young woman of slightly stocky build. Then, acting politely, he identified himself using the false name "Tom" and offered the woman a ride. After the woman accepted, instead of driving to her requested destination he drove her to a secluded location with which he was familiar.

In the previous incident, defendant allegedly tried to entice the woman into a shed to have sex. When she refused and returned to the vehicle, he got in and then verbally and physically assaulted her. The evidence was sufficient to support an inference that the assault would have included sexual assault had the victim not escaped from the vehicle. In the present case, defendant allegedly threatened and tortured the victim with a knife in the vehicle, forcing her to submit to and engage in various sexual acts.

The trial court ruled that the evidence of the prior assault was admissible, finding a "remarkable similarity" in the two assaults.

It concluded that the prior act demonstrated the defendant's common plan, scheme, design, and modus operandi, and was therefore logically relevant to a material issue independent of any impermissible inference of bad character. The court further found that the probative value far outweighed any unduly prejudicial effect. Because the prior act was sufficiently similar to establish an inference that a common plan was used involving similar steps to completion, including both the prior and the charged assaults, we find no reversible error.

 Evidence of prior similar acts or transactions is admissible in sexual assault prosecutions under § 16–10–301, C.R.S. (1993 Cum.Supp.) for the limited purpose of showing a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent. However, to be admissible the evidence must meet the four-part test articulated in *People v. Spoto*, 795 P.2d 1314 (Colo.1990): (1) the evidence must relate to a material fact in the case; (2) it must be logically relevant to the material fact; (3) the logical relevance must be independent of the prohibited inference that the defendant acted in conformity with a bad character; and (4) the probative value of the evidence must substantially outweigh the danger of unfair prejudice. *People v. Snyder*, 874 P.2d 1076 (Colo.1994).

 Typically, reference to a common plan is to two or more acts that have a nexus or relationship with each other from which a continuous scheme or common design can be discerned. In this sense, it is not necessary that there be any substantial similarity between the acts. *See People v. McKibben*, 862 P.2d 991 (Colo.App.1993) (Briggs, J., dissenting).

 There is, however, another sense in which a common plan may be relevant. It is when there is a series of acts of sufficient similarity that it may be inferred the latest act is part of a common plan. *See* E. Imwinkelried, *Uncharged Misconduct Evidence* § 3:23 (1984).

 While the difference is subtle, the relevance of the evidence does not rest on the prohibited inference that defendant com-

mitted the crime charged because he was acting in accordance with a generally bad character. Rather it is defendant's tendency to commit an act in a particular way that is relevant, not defendant's general character. As a result, because of the striking similarities in the acts, the evidence makes it at least somewhat more probable that defendant was again implementing the plan in committing the crime alleged. In this sense, it is similar to the use of *modus operandi* to establish identity. *See* E. Imwinkelried, *supra*, §§ 2:20 and 3:23.

█ Admission of prior acts to establish such a common plan is subject to abuse. *See* E. Imwinkelried, *supra*, § 4.13. However, the possibility of abuse may be reduced by requiring that the similarities in prior acts be sufficient to be equivalent to those required to establish *modus operandi*. *See State v. Plaster*, 424 N.W.2d 226 (Iowa 1988) (*modus operandi* evidence can tend to rebut consent defense). *See also People v. Jackson*, 162 Cal.Rptr. 574, 102 Cal.App.3d 620 (1980); *State v. Esposito*, 192 Conn. 166, 471 A.2d 949 (1984). Thus, the methods used in the commission of the acts being compared must be both similar to each other *and* dissimilar from the methods generally used in such an offense. *See People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); *People v. McKibben*, *supra* (Briggs, J., dissenting).

The greater the number of prior incidents the stronger the logical inference independent of defendant's bad character. *See* E. Imwinkelried, *supra*, §§ 4:01 and 5:05. However, when, as here, the "act" is complex, requiring several steps to completion, a single prior act may be sufficient to demonstrate the common plan. *Cf.* E. Imwinkelried, *supra*, § 5:05–06. This is because it is sufficient to demonstrate a tendency to put these multiple steps together into a common plan of action, again without regard to defendant's general character or the moral connotation of any one or more of the individual steps in the plan.

█ The trial court has substantial discretion in deciding whether the prior acts are sufficiently similar to be relevant in establishing a common plan. *See Pigford v. People*, 197 Colo. 358, 593 P.2d 354 (1979). Its

ruling will not be reversed absent an abuse of discretion. *See Adrian v. People*, 770 P.2d 1243 (Colo.1989). A ruling is not an abuse of discretion unless it is manifestly unreasonable, arbitrary, or unfair. *People v. Snyder*, *supra*; *People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

Notwithstanding defendant's assertion that the two acts differed materially, the trial court found the similarities "remarkable." We also find the similarities sufficiently striking that we cannot say the trial court abused its discretion in admitting the evidence to show the existence of a common plan. *See Pigford v. People*, *supra*; *People v. Kelley*, 66 Cal.2d 232, 424 P.2d 947, 57 Cal.Rptr. 363 (1967) (when offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness, they are admissible as showing a common plan); *cf. People v. Groves*, 854 P.2d 1310 (Colo.App. 1992); *State v. Saltarelli*, 98 Wash.2d 358, 655 P.2d 697 (1982).

Finally, we conclude that the trial court did not abuse its discretion in finding that the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice. The court gave instructions on the limited use of the evidence. We presume the jury followed the limiting instructions. *See People v. Moody*, 676 P.2d 691 (Colo.1984). We find no basis in the record to conclude that the challenged evidence had an undue tendency to excite the emotions of the jury to irrational behavior.

Under the circumstances presented here, we reject defendant's contention that admission of the prior act evidence requires reversal.

## II.

█ Defendant next contends that the trial court erred in refusing to allow cross-examination of the victim regarding certain prior statements she made. We are not persuaded.

Defendant learned through discovery that the victim had told certain investigating officers that, prior to the assault, defendant had

offered her some marijuana to smoke. Defendant filed a motion in limine to exclude any reference to this alleged conversation. However, prior to the hearing on defendant's motion, he learned that the victim had told another investigator that the marijuana was in fact hers and that *she* had offered to smoke it with defendant.

At the hearing, defendant moved to withdraw his motion and informed the court that he wanted to use the inconsistent statements to impeach the victim at trial. The court, however, accepted the prosecution's confession of the original motion and excluded any reference to either statement.

On the first day of trial, the trial court once again denied defendant's request to use the two statements, ruling that the statements were not relevant, that both parties would be prejudiced by the statements, and that, in any event, there was "enough coming into this case involving the credibility of" the victim. Evidence was presented at trial that on at least five other occasions the victim had made inconsistent statements to investigators or the authorities.

Defendant argues that it was "essential that the jury have *all* the conflicting statements that [the victim] made," and thus, it was error for the trial court to exclude reference to these two statements. We disagree.

■ Evidence, even if relevant, may be excluded under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See also* CRE 611; C.R.C.P. 43(a). The limiting of cross-examination concerning general credibility is within the sound discretion of the trial court. *People v. King,* 179 Colo. 94, 498 P.2d 1142 (1972).

Because the questioning denied here would have resulted in testimony cumulative of other testimony impeaching the victim and the evidence was potentially prejudicial to both parties, we cannot say that the trial court abused its discretion in precluding it. *See Puncec v. City & County of Denver,* 28 Colo. App. 542, 475 P.2d 359 (1970).

III.

■ Finally, defendant asserts that it was error to allow his wife to testify over his objection under the marital privilege rule regarding confidential marital conversations. Again, we disagree.

After the victim identified the defendant to police, they executed a search warrant at his home. Defendant's wife was there when the police arrived. She testified at trial as to her recollections of events that occurred and statements that she made to the police during the search.

Among other testimony given, defendant's wife testified that: Several months before the assault at issue here, she was aware that her husband kept a diving knife in her car; her husband went out alone, driving her car, on the night of the assault at issue; he did not return home until between 4:00 a.m. and 5:00 a.m. the next morning; and during the police search of her home she pointed out to the police the clothes her husband was wearing that night.

After this testimony, the trial court gave the jury a limiting instruction regarding the remainder of the wife's testimony. The court advised the jury that the testimony "may be used as evidence for the purpose of showing common plan, scheme or design, lack of consent, and to establish identity and modus operandi; and you should consider it for that purpose and for no other purpose."

She then testified that, on the morning following the alleged prior similar act of defendant introduced by the prosecution, the police arrived at her home. In response to questioning, she told them that her husband had been out for the evening, returned home, changed his clothes, and shaved off his mustache. She also testified that, when the police first arrived she had lied, telling them that her husband had been home all evening, but that she revised her story before the police left and told them that defendant had arrived home only fifteen to twenty minutes before they appeared.

The only objection to the testimony was based on marital privilege. The marital priv-

ilege statute, § 13–90–107, C.R.S. (1993 Cum. Supp.), provides in pertinent part:

(1)(a)(I) A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent. . . .

(1)(a)(II) The privilege described in the paragraph (a) does not apply to class 1, 2, or 3 felonies. . . . In this instance, during marriage or afterward, . . . a wife shall not be examined for or against her husband as to any communications intended to be made in confidence and made by one to the other without her consent.

Thus, when the crime at issue is a class 3 or more serious felony, as here, it is the witness-spouse who holds the privilege, not the defendant-spouse. Because no evidence was presented that defendant's wife did not consent to testify, defendant's contention is without merit.

■ Even if we were to assume that defendant's wife did not consent to testify, the statute would preclude examining her only as to communications "intended to be made in confidence." With only one exception, her testimony did not concern any communications from defendant to her that arguably could be considered as intended to be made in confidence. And, as to her testimony that defendant said he kept the diving knife in her car for protection, no evidence was offered that this communication was in fact intended to be made in confidence.

We therefore reject defendant's assertion that the trial court erred in permitting defendant's wife to testify over his objection.

Defendant's other contentions are without merit.

Judgment affirmed.

HUME and DAVIDSON, JJ., concur.