Filed 11/6/20  P. v. Hernandez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MIGUEL HERNANDEZ,<br><br>    Defendant and Appellant. | G058613<br><br>(Super. Ct. No. 17WF1654)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy.  Affirmed.

David Dworakowski, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Miguel Hernandez on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against his client but advised the court he found no issues to argue on Hernandez's behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124 (*Kelly*).

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised the following issues: (1) whether the great bodily injury finding was supported by substantial evidence; (2) whether the trial court prejudicially erred by allowing the prosecution to cross-examine Hernandez about his expertise in boxing over defense counsel's objection; and (3) whether the misdemeanor conviction of interference with a wireless communication device wa supported by substantial evidence.

We gave Hernandez 30 days to file written argument on his own behalf, and he did. The multiple issues Hernandez raises are described below.

We have independently reviewed the record in accordance with our obligations under *Anders* and *Kelly*. We found no arguable issues on appeal. We affirm the judgment.

2

FACTS

All charges were based on an incident at the home Hernandez shared with his girlfriend T.Z. (Victim). An information charged Hernandez with the following: domestic battery with corporal injury (Pen. Code, § 273.5, subd. (a)[1], count 1); assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), count 2); and misdemeanor interference with a wireless communication device (§ 591.5, count 3). As to counts 1 and 2, the information alleged Hernandez personally inflicted great bodily injury (GBI). (§ 12022.7, subd. (e).) Prior to the start of trial, the court granted the prosecution's motion to dismiss count 2.

At trial, Victim testified to the following. Victim was in a 12-year relationship with Hernandez, and they lived together in an apartment. One December evening, she came home from work, smoked marijuana, began preparing dinner, and saw Hernandez was drunk. Victim and Hernandez began to argue, and Hernandez accused her of cheating on him. Victim called Hernandez a "fucking asshole," and Hernandez called her a "bitch" and a "whore." Victim said, "'Look at the way you're treating me. We should just call this over.'" Hernandez responded, "'Is that a threat?'"

Hernandez placed his forearm against her throat, causing her pain. Victim screamed, "'I'm done with you. Look what you're doing. We can let Christmas be done, but then after Christmas we're done.'" Hernandez responded, "'What did you say?'" and punched her in the face splitting open her lip. Victim was cornered between the sink and refrigerator and blood was running down her face. She shouted, "'Look what you did. You're going to go to jail.'"

Hernandez left the kitchen, went to the couple's bedroom, and returned as Victim was calling 911 from her cell phone. Victim ran towards the door, but Hernandez

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

3

pulled her back by the hair. They both fell onto the door making a large hole in the nearby wall. During the struggle, Hernandez hit the cell phone from Victim's hand, and he put the phone into his back pocket. Hernandez threatened Victim telling her that he knew where her parents and friends lived and where she worked. He returned the cell phone after Victim asked for it back. Hernandez left the apartment. When police responded to the scene, they interviewed Victim.

Victim admitted she did not tell police the whole story. When asked what she left out, she said "a lot." On cross-examination, Victim explained she lied to the police because "because [she] was trying to cover for [Hernandez]."

The prosecution played the 911 call for the jury. On the 911 call, Victim is heard to say she was assaulted and needs the police and an ambulance to respond. She identified her assailant as Hernandez. The prosecution also had her identify numerous photos of the scene and of her injuries.

Victim testified she went to Hoag Hospital and received 22 stiches in her mouth. The injury took three weeks to heal, and she returned to hospital three times because the injury became infected.

A physician's assistant testified she was working at Hoag Hospital on the date of the offense, and she put 22 stitches in Victim's lower lip. The physician's assistant testified "when you suture something, a laceration, you're going to have a scar," but efforts are made to minimize the scarring.

Hernandez testified in his own defense. On the day of the incident, he got off work mid-afternoon and went to a restaurant with his boss. Hernandez had two beers, a shot of tequila, and hot wings. He described feeling "buzzed," but not drunk. His friend drove him home. Hernandez entered his home and his friend went upstairs to his home. When Hernandez saw Victim, he noticed she was "'stoned.'" He testified she was always stoned because she smokes daily. Hernandez explained when he said "stoned,"

4

he meant she was a heavy marijuana user. Hernandez called his friend to see if he wanted to come over to eat, and he agreed. Hernandez asked Victim if his friend could join them for dinner and that upset Victim and she stated, "'I don't want that man in my house.'" A while later, Hernandez walked into the kitchen and asked her "if [they] could have a nice Christmas" and asked that they not argue. Hernandez calmly gave her a kiss on the cheek, but she was still upset. Hernandez walked out of the room and Victim "started talking loudly, like if she wanted the neighbors to hear an argument."

Hernandez returned about five minutes later, but Victim was still angry. He again asked her, "'Can we just have a nice Christmas, please?'" But Victim appeared as if she just wanted to argue. Victim was being aggressive and cussing. When Hernandez attempted to calm her down, she hit him twice in the head. Hernandez was able to block a third punch. Hernandez testified he was frightened by Victim's behavior because he loved her, and he did not understand what was happening. Hernandez tried to find his car keys to leave the house, but he decided it would take too much time so he just left. As he was leaving, Victim was yelling "'Get the fuck out.'" After leaving the house, Hernandez walked to a park.

Three days later, Hernandez received a telephone call at 3:00 a.m. from Victim stating, "'I just called to tell you whatever happened that night wasn't your fault.'" Hernandez replied, "'I know it wasn't'" and then hung up the phone.

When asked about the events that night, Hernandez admitted he and Victim exchanged profane comments before he left. He said he was not there when she called 911 and denied taking her cell phone from her. He also denied punching her and said she was "stoned," slipped, and fell. He testified the only time he touched her was after she hit him, and he pushed her to get away.

5

Hernandez testified about two photographs depicting him with Victim. One picture taken shortly after the incident showed them at the beach. A second picture was taken around the same time. Both photographs were admitted into evidence.

A jury convicted Hernandez of counts 1 and 3, and found the GBI enhancement true. The court found Hernandez statutorily ineligible for probation because of the GBI finding. The court imposed the middle term of three years prison on count 1. The court struck the GBI enhancement for sentencing purposes only. The court suspended sentence on count 3. Hernandez filed a timely notice of appeal.

DISCUSSION

*I. Anders Issues*

First, counsel questions whether the GBI finding was supported by substantial evidence. "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citation.]" (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) "[T]he injury need not be so grave as to cause the victim '"permanent," "prolonged," or "protracted"' bodily damage. [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 64.) Evidence of Victim's injuries was substantial evidence to support the GBI enhancement.

Second, counsel questions whether the trial court prejudicially erred by allowing the prosecution to cross-examine Hernandez about his expertise in boxing over defense counsel's objection. The principles governing the admission of evidence are well settled. Only relevant evidence is admissible (Evid. Code, §§ 210, 350), and all relevant evidence is admissible unless excluded under the federal or state Constitutions or by statute (Evid. Code, § 351). (*People v. Harris* (2005) 37 Cal.4th 310, 337.) Trial courts have the discretion under Evidence Code section 352 to "'exclude evidence if its probative value is substantially outweighed by the probability that its admission will

6

(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citations.]" (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1017.) Evidence of Hernandez's expertise in boxing was relevant to dispute Hernandez's claim he was in fear of Victim. The court's admission of this evidence was not an abuse of discretion.

Lastly, counsel questions whether Hernandez's conviction of count 3 is supported by substantial evidence. Although Hernandez denied being present when Victim called 911 and denied taking her cell phone away, Victim testified Hernandez hit the cell phone out of her hand as she was trying to call 911. "A person who unlawfully and maliciously removes, injures, destroys, damages, or obstructs the use of any wireless communication device with the intent to prevent the use of the device to summon assistance or notify law enforcement or any public safety agency of a crime is guilty of a misdemeanor." (§ 591.5.) Victim's testimony provides substantial evidence to support the conviction.

## II. Kelly Issues

We now turn to the 11-page supplemental brief Hernandez filed. Hernandez presents a litany of random complaints. Much of what he asserts in his brief does not appear in the record, but we have attempted to organize the various issues to provide a coherent discussion.

## A. Complaints about Counsel

Hernandez lodges many complaints about his counsel. We interpret these complaints to be a claim of ineffective assistance of counsel. Hernandez asserts he "had to ask judge personally to push 40+ photos through." He states his attorney did not want to help him and describes the judge reviewing over 40 photographs and admitting two. The record reflects two photographs depicting Hernandez with Victim were admitted into evidence. Hernandez also alleges his attorney asked him during the discussion of the

7

photographs if he wanted to represent himself. He describes his attorney as being mad and upset. The record does not contain the conversations Hernandez describes about the admission of these two photographs.

Hernandez also alleges his "Public Defender had pushed [his] court date further two months" to subpoena medical records. Hernandez states his attorney refused to allow him to see the results. It is unclear what this complaint references, but the record does not reflect Hernandez ever objected when his case was continued.

Hernandez contends his attorney asked him to write down what he had learned in his domestic violence class and his attorney indicated he would read it to the judge at sentencing. The record does not reflect Hernandez read his statement or that there was any request he be allowed to read a statement.

A claim of ineffective assistance of counsel is more appropriately decided in a habeas corpus proceeding. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) In any event, to establish ineffective assistance of counsel, Hernandez must demonstrate he was prejudiced. (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1151.) Assuming there was deficient performance, there is not a reasonable probability the result of the proceeding would be different because there was strong evidence of his guilt.

B. *Sufficiency of the Evidence*

Hernandez challenges the sufficiency of the evidence by attacking the Victim's credibility. He asserts Victim admitted to being under the influence of drugs at the time of the incident and argues this makes her an unreliable witness. He states she lied about her drug use saying she only uses on weekends, but she uses daily. Hernandez contends Victim admitted to being under the influence of drugs and laughed when asked what her drug intake was that day. She indicated she did not remember. He claims Victim was so high on drugs she got the neighbors' names wrong. Hernandez suggests the blood test should have revealed what drugs Victim took. Based on Victim's

8

statements to the police, he also argues Victim was not afraid of him. Hernandez argues Victim's testimony as to how he hit her was inconsistent with her injuries.

Hernandez also disputes various portions of evidence in the record. He insists he was not drunk. He claims as he did when he testified, Victim was the aggressor and he was just trying to talk to her. He denies he ever threatened Victim's family. In his supplemental brief, Hernandez repeats much of his trial testimony, including denying he was present when Victim attempted to call 911 and he destroyed the cell phone.

Hernandez is essentially asking us to reevaluate and reweigh the evidence and come to our own conclusions. This we cannot do. In reviewing a challenge to the sufficiency of the evidence, "'we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]'" (*People v. Alexander* (2010) 49 Cal.4th 846 917.) Sufficient evidence supports all of the convictions.

## C. Prosecutorial Misconduct

Hernandez complains about the prosecutor's comments concerning his prior convictions. We view this complaint as an allegation of prosecutorial misconduct. Hernandez incorrectly states the trial judge said, "it[] has been over 20 some odd years since [Hernandez has] been in trouble, I don't want to hear about his priors." Hernandez then complains the prosecutor still brought up his priors. Our record does not indicate the judge or prosecutor made such statements.

What the record does show is Hernandez's attorney made the only comments about his prior convictions at the sentencing hearing. Specifically, his attorney argued Hernandez should be granted probation and noted, "Hernandez has not picked up

any felonies or misdemeanors in the last 20 years. And he was out of custody in this case for over two years. He didn't pick up any new cases as well. The only reference in the record where the prosecutor refers to Hernandez's prior convictions is in the prosecution's sentencing brief. This was not improper. In any event, section 1203, subdivision (b), requires the preparation of a probation report that includes a defendant's prior record, which the court considers with other factors in aggravation or mitigation of punishment. Prior convictions traditionally have been one of the factors affecting a decision to grant or deny probation. (See Cal. Rules of Court, rule 4.414(b)(1).)

Hernandez alleges the first time Victim was on the stand the prosecutor asked her if she needed a break. According to Hernandez, Victim asked why, and the prosecutor said, "because your [*sic*] not being consistent with the police report." The prosecutor asked Victim if she wanted to read the police report and the prosecutor told Victim what to say. We interpret Hernandez's comments to be allegations of prosecutorial misconduct by improperly coaching Victim. Nowhere in the record is there any evidence of the prosecutor asking Victim if she needed a break. There also is no evidence of the prosecutor telling Victim her testimony was inconsistent with the police report. In the record, there is a discussion between Hernandez's attorney and Victim regarding the police report. After Victim testified she was confused about whether she told the police Hernandez punched her, Hernandez's counsel asked Victim if she had read the police report prior to testifying. Victim testified she did not believe she had reviewed the police report, but she had reviewed transcripts with the investigator before testifying.

"'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a

10

fundamentally unfair trial. [Citation.]" (*People v. Parson* (2008) 44 Cal.4th 332, 359.) The record does not support a finding of prosecutorial misconduct.

## D. Judicial Misconduct

Hernandez complains that on the day of his sentencing, the judge made "a rude and unproven statement." He quotes the court as saying, "[Hernandez] didn't show any remorse and since he did threaten [Victim's] family." Hernandez argues he cannot show remorse for what he did not do. The record reflects the court did comment on Hernandez's lack of remorse. The court stated the following, "And what really concerns me, . . . Hernandez, about your conduct in this case is not only the fact that you committed the offense but that you continue to show no remorse and deny responsibility for it. [¶] I believe, listening to your testimony when you testified at trial, it had no credibility to it at all as did the jury." Whether the defendant is remorseful is an appropriate sentencing consideration. (Cal. Rule of Court, rule 4.414(b)(7).) Even where the defendant maintains his innocence, lack of remorse is a proper consideration in sentencing to the extent it shows his likelihood of future criminality. (*People v. Key* (1984) 153 Cal.App.3d 888, 900.) We find nothing "rude" about the judge's reference to Hernandez's lack of remorse.

## E. Sentencing

Hernandez appears to suggest the trial court improperly considered a fact that was untrue. Hernandez insists he did not flee the country. He was in Mexico working and was not aware of any warrant. The record reflects the court did not consider the information in the probation report indicating Hernandez fled to Mexico. Counsel objected to this information and the court granted the request to strike the information. Because the court struck from the probation report any reference to Hernandez fleeing the country, Hernandez's claim is without merit.

11

Hernandez disagrees with his sentence and asserts his probation interview was good. He argues he is a productive citizen and not a repeat offender. The trial court enjoys broad discretion in making its sentencing decisions. We review sentencing decisions for an abuse of discretion. (*People v. Superior Court* (1997) 14 Cal.4th 968, 976-977.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) The trial court sentencing decisions were not irrational or arbitrary.

*F. Miscellaneous Assertions*

Hernandez's supplemental brief includes miscellaneous comments without any context. Such comments include the listing of names and references to conflicts of interest. We were unable to determine the relevance of these comments and deem any issues relating to these comments as waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [appellant forfeits any point not supported by reasoned argument and citations to authority].)

## DISPOSITION

The judgment is affirmed.

_____
O'LEARY, P. J.

WE CONCUR:


_____
IKOLA, J.


_____
THOMPSON, J.

12