[Crim. No. 15074. Fourth Dist., Div. One. Feb. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WARREN KEY, Defendant and Appellant.

**COUNSEL**

Patrick J. Hennessey and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Victoria Sleeth, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Michael D. Wellington, John W. Carney and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—James Key appeals his convictions for kidnaping Judy S. (Pen. Code,[1] § 207), forcing her to orally copulate him (§ 288a, subd. (c)), raping her twice (§ 261, subd. (2)) and assaulting her with a deadly weapon (§ 245, subd. (a)). The jury found Key used a knife during the first two offenses (§ 12022, subd. (b)).[2]

The trial court admitted evidence of a prior uncharged incident of a sexual assault, rape and oral copulation to corroborate Judy S.'s credibility in rebuttal of Key's testimony she willingly engaged in sexual intercourse.

■ The principal issue we address is whether otherwise inadmissible evidence of Key's uncharged prior sexual misconduct similar to that currently alleged, became admissible solely because he testified the prosecuting witness willingly consented to the intercourse. We hold a defendant charged with *forcible rape introduces no additional material issue by a claim of consent.* Accordingly, admitting such evidence violated the prohibition in Evidence Code section 1101, subdivision (a),[3] and requires reversal of the forcible rape conviction.

We reverse the other convictions because the trial court erroneously told the jury it could also use the evidence of the prior uncharged acts to prove those charges. Finally, we discuss various sentencing errors to assist the trial court in avoiding them should they arise after retrial.

### Facts

We recite the facts most favorable to the judgment. While Judy S., a young Caucasian, was driving home at 2:30 a.m., Key, a black, drove next to her and said one of the wheels of her car was coming off. When she stopped, Key choked her and held a knife to her throat, pulled her into his car and forced her to orally copulate him as he drove to his sister's apartment.[4] Once there, he raped her twice. Key spoke with a southern accent.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]The same jury declared itself "hung" on separate charges Key raped and orally copulated Kathy D. during a burglary. All charges relating to Kathy D. were dismissed when he later pleaded guilty to burglary (§ 459) while using a knife (§ 12022, subd. (b)).

[3]Evidence Code section 1101, subdivision (a) reads: "Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion."

[4]We have condensed the prosecuting witness' version and do not include details not necessary to decide this appeal. However, we note the case solely turns on credibility of this witness and of Key. The circumstantial evidence is ambiguous or neutral, and a witness who saw the two as they walked from the apartment partially contradicted Judy S. On the other hand, Key's statement to the police immediately after arrest is inconsistent with his version at trial.

Key denied kidnaping, assaulting or engaging in oral copulation. He admitted having consensual sexual relations with Judy after she willingly came to his sister's apartment.

At trial, Key successfully *Beagled*[5] the court into excluding evidence of his earlier felony courts-martial convictions for assaults with intent to commit rape, indecent assault and assault with a deadly weapon, involving three separate victims. However, when he testified to having consensual sexual intercourse with Judy S., one young Caucasian female victim of Key's earlier assaults was permitted to testify, in rebuttal, to an earlier incident where Key forcibly assaulted, raped and forced her to orally copulate him. She stated: At 1 a.m., while both she and Key were serving in the Army, Key approached her outside the women's barracks. He asked to see her bunkmate, but as she opened the door to call her friend Key grabbed her arm and asked her if she wanted to get high. When she said no, he choked her, hit her and forced her behind some empty classrooms where he beat her head on the ground and threatened her with a knife. He ordered her not to look at his face. During this rape, the perpetrator could not achieve an erection so he forced the victim to orally copulate him.[6]

Relying on the rationale in *People* v. *Jackson* (1980) 110 Cal.App.3d 560 [167 Cal.Rptr. 915], (*Jackson II*), the trial court found eight, not unique, similarities between the attack on the servicewoman and the one on Judy S.,[7] and admitted the evidence solely to prove Key's general intent for the two sex acts to which he claimed Judy S. consented. The trial court found the probative value of the prior uncharged offenses outweighed its prejudicial effect. (Evid. Code, § 352.) The jury was later instructed it could use this evidence to establish the *identity* of the person who committed *all* crimes alleged (a nonissue except for the Kathy D. crimes for which it was not admitted), the intent of the perpetrator and *to corroborate the testimony of both prosecuting witnesses on all crimes charged.*[8]

---

[5]*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

[6]This victim participated in two live lineups shortly after this incident. In the first, she selected a Black military policeman as the rapist. Key was not in this lineup. At the second, which included Key, she identified a person other than Key, stating "That man over there raped me." Key apparently denied any contact with this victim at his courts-martial.

[7]The trial court found the following common factors:
(1) A Black assaulting a young Caucasian female; (2) with whom he had had no prior contact; (3) shortly after midnight; (4) by employing a "ruse" to allay the victim's suspicions; (5) to get close enough to choke her; (6) and threaten her with a knife; (7) to force her to go with him to a private place; (8) where he forced the victim to engage in oral copulation and vaginal intercourse.

[8]Because Key had denied any contact with Kathy D., the trial court did not compare points of similarity in those charged crimes with those of the military episode. In essence, the court did not admit the proof of the prior offense for any purpose relating to the Kathy D. charges.

## The Court Erred in Admitting Evidence of Key's Prior Acts to Disprove His Claim the Sexual Intercourse Was Consensual

■ Evidence of prior criminal acts may not be introduced in evidence (Evid. Code, § 1101, subd. (a)) unless the previous conduct logically tends to prove some relevant fact other than a defendant's propensity to commit crimes, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." (Evid. Code, § 1101, subd. (b).) Although the examples cited in subdivision (b) are not exclusive, none allow prior crimes evidence *solely* to corroborate or bolster the credibility of a witness, no matter how similar the previous acts are to the unique circumstances of the current charges. The Supreme Court specifically so held in *People* v. *Thomas* (1978) 20 Cal.3d 457, 469 [143 Cal.Rptr. 215, 573 P.2d 433]. (See also analysis in *People* v. *Thompson* (1979) 98 Cal.App.3d 467, 475-482 [159 Cal.Rptr. 615].)

If, however, evidence of prior uncharged acts is admissible to show a *common plan or scheme* (Evid. Code, § 1101, subd. (b)), then it may also "assist" in corroborating the prosecuting witness' version of the events. (*People* v. *Thomas, supra,* 20 Cal.3d 457, 468.) The majority decision in *Jackson II,* interprets this language from *Thomas* as approving admitting such evidence to "corroborate" a victim's testimony on a material issue such as a defendant's intent. From this it reasons, a defendant places his "intent" in issue whenever he relies on the victim's consent in defending a general intent, forcible sex charge. (But see Poché, J. dis., *id.,* at pp. 571-575.)

The court in *Jackson II,* relies on its earlier opinion in a separate case (*People* v. *Jackson* (1980) 102 Cal.App.3d 620, 625 [162 Cal.Rptr. 574] (*Jackson I*)) as authority for an hitherto unique proposition that where a person charged with forcible adult rape claims consent, evidence of prior similarly committed sex offenses on other adults become admissible for the sole purpose of corroborating the testimony of the prosecuting witness. *Jackson I, supra,* at page 625, erroneously relies on *People* v. *Thomas, supra,* 20 Cal.3d 457, which expressly holds to the contrary. (See 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 33.6, pp. 1212-1213.) Thus, *Jackson II's* reliance on *Jackson I* is misplaced.

However, *Jackson II* goes further and correctly states the holding in *Thomas* would permit evidence of similar nonremote sex acts to corroborate the victim's testimony where the evidence is first admitted to prove a sep-

arate material issue "such as the intent of the defendant."[9] *Jackson II* then held a defendant places his intent in issue when he claims the victim consented to intercourse, i.e., a statement of his intent not to have forcible intercourse. This in turn was held to permit evidence of the prior acts under the principle analyzed in *Thomas,* which had determined the issue in light of decisions where proof of the defendant's specific intent was a *specific element* of the corpus delicti.

We believe *Jackson II's* analysis strays: first, in a forcible rape charge of an adult victim, the witness' consent is placed in issue by the not guilty plea; second, the defendant's intent in a forcible rape is not directly relevant (except where he claims mistake of fact, accident, etc.).

Here, Key's testimony added no issue to the trial. His denying the force, the threats, the employment of a ruse, and the kidnaping did not increase the prosecution's legal burden. ■ Section 261, subdivision (2) defines rape as sexual intercourse accomplished against a person's will. By definition, it is nonconsensual sexual intercourse. Therefore, whether the defendant testifies, or stands silent, the prosecution must establish the victim's nonconsent beyond a reasonable doubt along with all other elements of the corpus delicti. (See 1 Witkin, Cal. Crimes (1963) § 288, p. 265; CALJIC No. 10.00.)

■ Further, we believe *Jackson II* errs in assuming the consent defense places the subjective, general intent of the alleged rapist in issue. Because the defendant's intent is not an element of the corpus delicti of forcible rape or of oral copulation, when consent is raised as a defense there is no new issue of the defendant's subjective intent; the defense only disputes the state of mind of the prosecuting witness. Evidence of defendant's prior conduct is, at best, only tangentially probative of this issue.

The People contend a recent case *(People* v. *Salazar* (1983) 144 Cal.App.3d 799 [193 Cal.Rptr. 1]) supports admitting evidence of a defendant's prior similar uncharged sexual misconduct to prove the victim's "lack of consent" in addition to the rape defendant's general intent, once he testifies to consent. The People ignore the material factual differences between *Salazar* and this case.

---

[9]This holding, as repeated in *People* v. *Pendleton* (1979) 25 Cal.3d 371, 377, 378 [158 Cal.Rptr. 343, 599 P.2d 649], is criticized in 2 Jefferson, California Evidence Benchbook, *supra,* at page 1213 as being logically inconsistent with Evidence Code section 1101, subdivision (b). In *Pendleton,* the evidence was admitted to show defendant's specific intent on the associated charge of first degree burglary (entry with intent to rape).

Unlike Key, Salazar was charged with, and convicted of, assaulting two separate victims with the *specific intent to commit rape*.[10] (Pen. Code, § 220.) ■ Unlike rape, a violation of section 220 requires a specific intent to commit the underlying crime. Thus, one element of the corpus delicti of each assault was Salazar's specific intent to rape at the time he committed the assaults. As the trial court stated in *Salazar*, the two uncharged prior assaults contained characteristics of a "sadomasochistic problem"[11] similar to that exhibited by defendant's conduct in both charged assaults. Because Salazar's conduct during each prior assault culminated in an actual rape, a logical inference can be drawn by the trier of fact that similarly conducted assaults against each victim in the charged counts were specifically intended to achieve the same result. This is a classic instance of properly admissible evidence of prior criminal activities under Evidence Code section 1101, subdivision (b). This being so, there was already a material issue of ultimate fact inherent in the felony assault charges against each victim as to which the prior sexual misconduct was probative, and there was no need for the reviewing court to review the issue in the context of whether the defendant took the stand and testified to consent,[12] because the decision shows the issue was not resolved in that context by the trial court.

In *Salazar*, the prosecutor offered to prove prior similar acts *at the close* of his case-in-chief and said he would call witnesses in rebuttal if appellant chose to take the stand and *deny committing the prior acts*. (An issue different from consent.) The trial court stated that because it had ruled late on the question of admissibility, it would not require the evidence of prior acts to be presented in the case-in-chief but would allow the evidence on cross-examination or on rebuttal. Thus, both the prosecutor and the trial court considered the prior acts were admissible evidence in the case-in-chief, and *regardless of whether the defendant claimed consent*, undoubtedly to prove the specific intent underlying the felonious assaults. Assuming the prior acts were, as the reviewing court found, sufficiently similar to the charged sadomasochistic sexual assaults and not excludable under Evidence Code section 352, they were relevant to establish Salazar's *specific* intent in assaulting each victim was to commit rape.

Disregarding these significant factual differences, the People cite the following language in Salazar: "By admitting the incident with Patricia M., but relying on the defense of consent, appellant put his intent in issue."

---

[10]Salazar was only convicted of, and apparently only charged with, raping Patricia M.

[11]*People* v. *Salazar, supra*, 144 Cal.App.3d 799, 808.

[12]We note the *Salazar* decision did not refer to either *Jackson I* or *Jackson II*, the two earlier decisions directly addressing that issue.

(*Id.*, at p. 810.) (This is the *Jackson* holding.) It then goes on to state: "Because *both charged counts involved young women* who had socialized with appellant, had gone to bars with him, and had gone to his residence (or had invited him to theirs) late in the evening after alcohol had been consumed, the prosecution was required to put to rest any claim of consent. To prove lack of consent *as well as* intent, it was necessary for the prosecution to prove that appellant had raped other women under similar circumstances." (*Id.*, at p. 810, italics added.)

The People refer to this language, standing alone, and argue *Salazar* justifies use of the prior similar acts to prove either "lack of consent" or general intent. We believe the People's suggested interpretation of the *Salazar* holding is incorrect. On the one hand, the decision states, "by admitting the incident with Patricia M. but relying on the defense of consent, appellant put his intent in issue." (*Id.*, at p. 810.) This would imply Salazar intended to testify Patricia M. consented, but not to make that contention regarding the other victim. However, the court immediately goes on to state, "*because both charged counts involve young women* who had socialized with appellant . . . the prosecution was required to put to rest any claim of consent." Under the People's interpretation, this language implies the reviewing court believed the prior acts would be admissible to establish the lack of consent of *each* victim, even though the defense of consent was going to be raised against only one, Patricia M., the single victim he was charged with raping.

As we have discussed above, "lack of consent" is not raised for the first time by way of an affirmative defense (such as his state of mind regarding accident, misfortune, mistake of fact, etc.), it is an element of the corpus delicti which the prosecution must prove in its case-in-chief beyond reasonable doubt even though a defendant stands on his plea of not guilty. To the extent that *Salazar* may hold to the contrary in its facts where such a holding is unnecessary, we believe it is incorrect.

Here, the acts charge a crime in which it is necessary to prove there was force or threats. Key only concedes he engaged in vaginal intercourse (he denied engaging in oral copulation) with Judy S. and denies forcing or threatening the victim.[13] He also denied telling the witness her car wheel was loose, or employing any ruse alleging she accompanied him willingly.

---

[13]Key also completely denied any contact with Kathy D., for whose charges the jurors were also told the previous sex acts could be used to corroborate her testimony. While this clearly violates Evidence Code section 1101, subdivision (a) because neither identity nor intent is placed in issue, this error is nonprejudicial because the jury failed to convict him on these charges. For the same reason we do not find the trial court reversibly erred by denying Key's pretrial motion to sever the counts.

Thus, the jury's task was to determine whether the ruse, forcible acts and threats were employed by Key, and, if so, did they compel the prosecuting witness to submit to the sexual acts.

If Judy S.'s version is believed, Key's state of mind is irrelevant, the sex acts were achieved by force and fear. If Key's version is believed, there were no acts committed from which a trier-of-fact could infer physical force or threats were used. If no force or threats were employed, the victim's lack of consent is irrelevant to the sex crimes as charged. If the witness consented to sexual intercourse, no forcible rape occurred even though the defendant intended to rape. It is these factual conflicts which the jury must resolve by weighing the respective credibility of the victim and defendant.

Because there is no independent material issue on which the prior acts were admissible,[14] it was error to allow the jury to consider them solely to bolster the witness' credibility or to impeach the defendant. The only effect of the prior act evidence in this case is to allow it to bolster the witness' credibility. While this would seem to be a socially acceptable purpose, it does not comport with the applicable statutory and decisional law.

THE TRIAL COURT PREJUDICIALLY ERRED BY INSTRUCTING THE JURY THE PRIOR ACTS COULD BE USED TO PROVE CRIMES OTHER THAN THE RAPES

The trial court gave a modified version of CALJIC No. 2.50 (a limiting instruction) which prejudicially implies the jurors could use the prior crime evidence of defendant's guilt, to prove charges other than those to which it should have been confined. ▉ It is the court's obligation to insure that given instructions correctly state the law and adequately assist the jury in resolving the issues those instructions address.

Even under the holding of *Jackson II,* prior sex crime evidence is not admissible to assist the jury in resolving the oral copulation charge because consent was not raised as a defense to that charge. In the absence of a proper limiting instruction, the prior crime evidence clearly prejudiced Key on that count. The same is true of the kidnaping and assault with a deadly weapon counts, which Key unequivocally denied. (See *People* v. *Thompson, supra,* 98 Cal.App.3d 467, 480.)

In telling the jury it could use the prior crime evidence to corroborate the prosecuting witness' credibility, without limiting the use to the rape counts,

---

[14]Key did not claim a defense based on an honest mistake of fact on the question of whether there was consent. (See *People* v. *Mayberry* (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337].)

the trial court impliedly told the jurors they could also use it to prove her version of the contested facts relating to the denied kidnaping, oral copulation and assault, even though the court admitted the evidence solely to rebut the Judy S. rape charges to which Key claimed consent.

■ It is the court's duty to identify the precise evidence to which the other crimes testimony relates. (*People* v. *Rollo* (1977) 20 Cal.3d 109, 122-123 and fn. 6 [141 Cal.Rptr. 177, 569 P.2d 771].) Although such error is ordinarily harmless, *Rollo* recognizes failure to give a limiting instruction under certain circumstances may mislead the jury to a defendant's prejudice. We believe *Rollo's* holding implies a corollary duty on the trial court to assist the jurors by telling them the precise issues to which the evidence is limited. ■ Similarly, although there is no *sua sponte* duty to give limiting instructions to tell jurors the precise purposes for which the evidence of prior criminal misconduct may be used (see *People* v. *Collie* (1981) 30 Cal.3d 43, 63 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]), when a trial court does give such an instruction specifically calling their attention to the significance of this substantially prejudicial evidence, it should do so accurately. ■ Here, the instruction given exacerbated the prejudice. Even if the prior acts had been admissible proof as to the Judy S. rape counts, the instructional error requires reversal of the oral copulation, kidnaping and assault charges.[15]

*The Sentencing Error Contentions*

We address certain sentencing issues which may arise again following retrial.[16] The court designated the forced oral copulation as the principal offense and imposed the upper term because the victim was particularly vulnerable and for the planning and sophistication involved in the crime. It imposed the upper term on the first rape because Key threatened great bodily harm to the victim and his lack of remorse, and stated it was making the term full and consecutive to the one for the oral copulation. It also aggravated the term for the second rape because it involved a separate act of violence, and imposed that term consecutive to the other two terms because Key had no remorse and because he had engaged in a pattern of attacks on women. When pushed by the district attorney whether he was imposing full consecutive terms under section 667.6, subdivision (c) or under subdivision (d), the court said only, "I am finding separate acts. Separate acts of violence against the person. . . . [¶] And the further reason . . . [is] . . . the

---

[15]Because of our disposition, we do not address Key's claim the prior conduct was not sufficiently similar to allow the evidence to be considered, nor the People's response that less similarity is required when the fact for the jury's inference is other than identity.

[16]The claimed errors only impact the sentences imposed for crimes against Judy S.

defendant had been released just a short time from . . . Fort Leavenworth for attacks on women.''

Key first claims the court mistakenly sentenced him under section 667.6, subdivision (d), which mandates full consecutive terms when sex acts are perpetrated against one victim on separate occasions. Although the three acts here with Judy occurred on one occasion, nothing in the record implies the court was relying on subdivision (d). If it were, it would not have needed to state reasons for making the term full and consecutive—subdivision (d) *mandates* such a result and the trial court has no choice. ■ Rather, the court exercised its discretion under subdivision (c), which permits, but does not require, the court to run the sentences consecutively, and the court stated reasons for the exercise of its discretion in this regard.[17]

However, the trial court erred in not first stating reasons for choosing to enhance punishment by imposing consecutive sentences and then separately stating reasons for imposing them under the even more punitive provisions of section 667.6, subdivision (c). (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 348-349 [193 Cal.Rptr. 882, 667 P.2d 686].)

Key claims the court improperly used the same factor, ''lack of remorse,'' to both aggravate the term for the first rape on Judy S., and to impose it consecutive to the term for the second rape on that person. Lack of remorse, were it an appropriate factor, applies separately to each of these separate incidents, for it is apparent Key showed no remorse for either crime. ■ Further, the upper base term for the first rape was also justified by the court's reliance on it involving a threat of bodily harm. Since there are no mitigating factors apparent, or suggested, even one valid criterion is sufficient. (*People* v. *Boerner* (1981) 120 Cal.App.3d 506, 509-510 [174 Cal.Rptr. 629].)

■ However, lack of remorse is not a valid reason to aggravate a sentence because Key denies committing the crimes. Lack of remorse is not specifically designated as a relevant aggravating factor in California Rules of Court, rule 421, but is listed as a criterion affecting probation in rule 414(d)(9). Where a defendant acknowledges guilt, but shows no remorse, he may be expected to repeat the criminal conduct under similar circumstances. (See *People* v. *Fowler* (1980) 109 Cal.App.3d 557, 566 [167 Cal.Rptr. 235] (where defendant in effect confessed), overruled on other

---

[17]In his statement in aggravation and at the sentencing hearing, the district attorney asked the court to exercise its discretion under subdivision (c) and impose full consecutive terms. The court is deemed to have considered counsel's remarks. This, along with the court's statement of reasons for imposing consecutive sentences, disproves Key's assertion the court was unaware it had discretion not to impose full consecutive terms.

grounds in *People* v. *Humphrey* (1982) 138 Cal.App.3d 881, 882-883 [188 Cal.Rptr. 473].) In such a case, lack of remorse may be applied to aggravate as an additional relevant factor pursuant to rule 408. However, here the evidence of nonconsensual intercourse consists primarily of the sharply conflicting testimony of Key and the prosecuting witness. The evidence of guilt is not overwhelming and Key steadfastly denies the rapes. Under these circumstances, Key's lack of sorrow does not indicate he is likely to engage in future sexual attacks.

■ Key faults the trial court for aggravating his term for the second rape solely because "the crimes actually involve separate acts of violence," while using the same factor to justify imposing the harsh, full-consecutive sentencing under section 667.6, subdivision (c). He is correct. No other factor was stated by the court to justify the upper term on this count. If this is a proper factor to impose the upper term for this second rape,[18] it may not be used again to impose full consecutive sentences under section 667.6, subdivision (c).

The judgment is reversed.

Wiener, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied March 27, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 2, 1984. Lucas, J., was of the opinion that the petition should be granted.

---

[18]The "violence" referred to is not defined. Some violence is an element of the forcible sex crimes involved, i.e., forcible rape and forcible oral copulation. To the extent that violence does not exceed the force necessary to consummate the crime(s), it may not be used to aggravate the base term. (Cal. Rules of Court, rule 441(d).)