Filed 6/18/24  P. v. Quillope CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081306 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE396367) |
| BERNARDO SANTOS QUILLOPE, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Affirmed.

Patrick M. Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Bernardo Santos Quillope guilty of forcible rape (Pen. Code,[1] § 261, subd. (a)(2); count 1); forcible sodomy (§ 286, subd. (c)(2)(A); count 2); forcible oral copulation (§ 287, subd. (c)(2)(A); count 3); forcible sexual penetration (§ 289, subd. (a)(1)(A); count 4); inflicting corporal injury on a spouse/cohabitant (§ 273.5, subd. (a); count 5); and false imprisonment by violence, menace, fraud, or deceit (§§ 236, 237, subd. (a); count 6). Quillope admitted a prior serious felony (§ 667, subd. (a)(1)), a prior strike (§§ 667, subds. (b)–(i), 1170.12), and a prior conviction for inflicting corporal injury on a spouse/cohabitant (§ 273.5, subd. (f)(1)). The trial court sentenced Quillope to a 50-year prison term.

Quillope contends that the trial court erred in admitting evidence of a prior sexual assault against a former girlfriend. He further argues that the trial court made several errors at sentencing, namely (1) denying his motion to strike his prior strike; (2) failing to consider a lower term sentence based on a head injury Quillope sustained as a youth; and (3) rejecting pleas for leniency by defense counsel and the victim after Quillope made comments at the sentencing hearing that the trial court described as showing Quillope's lack of remorse.

We conclude that Quillope's arguments lack merit, and we accordingly affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Quillope and C.J. began dating in February 2019, and in November 2019 they were living together. C.J. told a law enforcement officer and a forensic nurse examiner that, on November 17, 2019, Quillope sexually

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

assaulted her and punched her in the head after she told him that she was leaving him. Specifically, C.J. reported that, against her will, Quillope trapped her in the bathroom where he digitally penetrated her, penetrated her vagina and anus with his penis, and forced her to orally copulate him. Quillope then punched C.J. in the head several times before allowing her to leave the apartment.

Quillope was charged with forcible rape (§ 261, subd. (a)(2); count 1); forcible sodomy (§ 286, subd. (c)(2)(A); count 2); forcible oral copulation (§ 287, subd. (c)(2)(A); count 3); forcible sexual penetration (§ 289, subd. (a)(1)(A); count 4); inflicting corporal injury on a spouse/cohabitant, with a previous conviction of that offense in the last seven years (§ 273.5, subds. (a), (f)(1); count 5); and false imprisonment by violence, menace, fraud, or deceit (§§ 236, 237, subd. (a); count 6).

C.J. testified at trial that she had recently married Quillope, and claimed that, because of drug and alcohol use, she did not remember anything about the incident or anything that occurred between September 2019 and May or June 2020. The trial court found that C.J.'s lack of memory was not credible, and it therefore allowed the admission of prior statements by C.J. describing Quillope's assault on her.

The trial court also allowed the prosecutor to present the testimony of Quillope's former girlfriend (Former Girlfriend) about incidents in 2011 and 2014, during which Quillope used violence against her. During the 2011 incident, Quillope sexually penetrated Former Girlfriend's vagina and anus without her consent and forced her to orally copulate him. During the 2014 incident, Quillope choked Former Girlfriend and caused an injury to her forehead because he suspected her of seeing another man. The jury was informed that, based on the two incidents, Quillope pled guilty in

3

February 2011 and in September 2014 to inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)).

The jury found Quillope guilty on all the counts as charged. In a subsequent proceeding before the trial court, Quillope admitted a prior serious felony (§ 667, subd. (a)(1)), a prior strike (§§ 667, subds. (b)–(i), 1170.12), and a prior conviction for inflicting corporal injury on a spouse/cohabitant (§ 273.5, subd. (f)(1)). At that hearing, the trial court also found beyond a reasonable doubt the presence of several aggravating factors. (Cal. Rules of Court, rule 4.421.)

At the sentencing hearing on October 21, 2022, the trial court denied Quillope's request to strike his prior strike but it did strike the serious prior felony allegation. The trial court sentenced Quillope to a 50-year prison term. Specifically, it selected count 5 as the principal term and imposed an upper term sentence, which it doubled based on Quillope's prior strike. The trial court imposed a sentence of double the middle term on each of the remaining counts, except count 4, for which it doubled a sentence of one-third the middle term. The sentences were ordered to run consecutively, except for count 6 which was ordered to run concurrently.

## II.

## DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Quillope's 2011 Sexual Assault on Former Girlfriend*

We first address Quillope's contention that the trial court erred in admitting evidence of his 2011 sexual assault on Former Girlfriend.

Under Evidence Code section 1101, subdivision (a), unless an exception applies, evidence of a person's character, including evidence of specific instances of past conduct, is inadmissible when offered to prove the person's conduct on a specified occasion. One exception is set forth in Evidence Code

4

section 1109, subdivision (a)(1), which provides that, except in certain situations that are not relevant here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." A second exception to Evidence Code section 1101 is set forth in Evidence Code section 1108, subdivision (a), which provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

During motions in limine the People moved pursuant to Evidence Code sections 1108 and 1109 to introduce evidence of three incidents involving Former Girlfriend: (1) the 2011 incident in which Quillope forced her to engage in anal and vaginal sex and oral copulation; (2) the 2014 incident in which Quillope physically attacked her; and (3) another incident in 2014 in which Quillope violated a criminal protective order. Defense counsel opposed the admission of each item. The trial court ruled that it would admit evidence of the 2011 sexual assault and the 2014 physical attack, but not the 2014 violation of the criminal protective order.

Quillope challenges the trial court's ruling admitting evidence of the 2011 sexual assault. He contends that "Evidence Code section 1109 . . . subdivision (d) provides that prior acts occurring more than five years earlier than the charged incident are presumed to be remote, and the trial court must conduct a[n Evidence Code] section 352 hearing where it 'shall' consider remoteness." Because the 2011 sexual assault occurred more than five years before the 2019 incident charged in this case, he argues that the trial court

5

"fail[ed] to comply with the requirements of [Evidence Code] section 1109" because it did not hold a hearing to consider remoteness.

To support his argument, Quillope specifically refers to subdivision (d)(3) of Evidence Code section 1109. Subdivision (d)(3) provides, " 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to [Evidence Code] Section 352, *which shall include consideration of any corroboration and remoteness in time*, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." (Evid. Code, § 1109, subd. (d)(3), italics added.)

Quillope reads this provision to require a hearing on corroboration and remoteness in time for any prior act that occurred more than five years before the charged offense. However, that is simply not what the statute says. The plain words of the statute state that corroboration and remoteness in time must be considered when the trial court decides whether to expand the definition of "domestic violence" to include that term as defined in Family Code section 6211.[2] Further, the five-year period is relevant because the

---

[2]     Penal Code section 13700, subdivision (b) states, " 'Domestic violence' means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." Family Code section 6211 defines " 'Domestic violence' " as "abuse perpetrated against any of the following persons: [¶] (a) A spouse or former spouse. [¶] (b) A cohabitant or former cohabitant, as defined in [Family Code] Section 6209. [¶] (c) A person with whom the respondent is having or has had a dating or engagement relationship. [¶] (d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act (Part 3 (commencing with [Family Code] Section 7600) of Division 12). [¶] (e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the

6

expanded definition in Family Code section 6211 may be applied only for acts that occur within five years of the charged offense. (See *Mani*, *supra*, 74 Cal.App.5th at p. 360 [discussing the meaning of the "plain and unambiguous language" of the provision at issue here].) Thus, contrary to Quillope's description, Evidence Code section 1109, subdivision (d)(3) neither creates a presumption of remoteness for prior acts occurring more than five years prior to the charged offense, nor does it require that the trial court hold a hearing to specifically consider remoteness before deciding whether to admit such evidence.

To be sure, Evidence Code section 1109 *does* require the trial court to consider the applicability of Evidence Code section 352 when deciding whether to admit prior acts of domestic violence. (Evid. Code, § 1109, subd. (a) ["evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 *if the evidence is not inadmissible pursuant to* [*Evidence Code*] *Section 352*" (italics added)].) Evidence Code section 352 provides, "The court in its discretion may exclude

---

male parent is the father of the child to be protected. [¶] (f) Any other person related by consanguinity or affinity within the second degree." (Fam. Code, § 6211.) "[T]he Family Code definition of domestic violence is broader than the Penal Code definition." (*People v. Mani* (2022) 74 Cal.App.5th 343, 363 (*Mani*).) One significant difference between the two definitions appears in subdivision (f) of Family Code section 6211, which encompasses abuse against a wide range of relatives. Further, Family Code section 6211 incorporates a more expansive definition of "abuse." (*Mani*, at pp. 360–361.) In this case, the more restricted definition of "domestic violence" in Penal Code section 13700 covered the 2011 sexual assault on Former Girlfriend because she was a "person with whom the suspect has . . . had a dating . . . relationship," and sexual assault is clearly "abuse" within the meaning of Penal Code section 13700. (Pen. Code, § 13700, subds. (a), (b).)

7

evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Here, the trial court expressly conducted an analysis under Evidence Code section 352, concluding that one of the 2014 incidents should be excluded from evidence because it lacked sufficient probative value. But there is no special requirement that the trial court specifically consider remoteness during its Evidence Code section 352 inquiry for any prior act occurring more than five years before the charged offense.[3]

The relevant time bar set forth in Evidence Code section 1109 is not the *five-year* period that Quillope incorrectly reads into subdivision (d)(3) but rather the *10-year* period set forth in subdivision (e). That provision states that "[e]vidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." (Evid. Code, § 1109, subd. (e).) Here, the 2011 sexual assault was well within 10 years of

---

[3] Premised on his misreading of Evidence Code section 1109, subdivision (d)(3), Quillope contends that the trial court violated his right to due process because it failed to "carefully employ the [Evidence Code] section 352 safeguard" when it failed to conduct a purportedly statutorily required remoteness inquiry as part of its analysis under Evidence Code section 352. For that argument, Quillope relies on *People v. Falsetta* (1999) 21 Cal.4th 903, 917, in which our Supreme Court held that Evidence Code section 1108 was saved from a due process challenge because of "the trial court's discretion to exclude propensity evidence under [Evidence Code] section 352." The argument fails because, as we have explained, Evidence Code section 1109, subdivision (d)(3) does not require a trial court to specifically consider remoteness as part of an analysis under Evidence Code section 352 for prior acts occurring more than five years before the charged offense.

8

the 2019 offense charged in this case. It therefore did not trigger the ten-year time bar.

We accordingly find no merit to Quillope's contention that the trial court erred in admitting evidence of his 2011 sexual assault on Former Girlfriend.

B.    *The Trial Court Did Not Abuse Its Discretion in Denying Quillope's Request to Strike His Prior Strike*

We next consider Quillope's contention that the trial court erred in denying his motion to strike his prior strike.

1.    *Applicable Legal Standards*

In applying the "Three Strikes" law, a trial court may strike a prior strike "in furtherance of justice." (§ 1385, subd. (a); see also *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530.) In deciding whether to do so, a court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[T]he law creates a strong presumption that any sentence that conforms to [its] sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony* ).)

We apply an abuse of discretion standard when reviewing the trial court's refusal to strike a prior strike. (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss . . . or where the court considered impermissible factors in declining

9

to dismiss," or where " 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. . . . [¶] But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Id.* at p. 378, citations omitted.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

2.     *Relevant Background*

Quillope's prior strike was from a 1997 conviction for assault with a firearm. Quillope's written motion to strike that prior strike set forth three grounds for an exercise of discretion in his favor: (1) the strike was remote in time because the conviction was from 1997; (2) Quillope's criminal history was the result of long-time drug and alcohol use, including his use of drugs during the acts against C.J. that gave rise to the instant prosecution; and (3) Quillope had completed cognitive behavioral therapy classes while in jail, showing a willingness to rehabilitate. At the sentencing hearing, defense counsel focused primarily on one of those arguments, namely that the strike was remote in time.

The People opposed the motion to strike the prior strike, relying to a large extent on Quillope's subsequent criminal history. As the People summarize Quillope's criminal history in the respondent's brief: "Over the next two decades [after the 1997 strike], [Quillope] was convicted of four felonies and five misdemeanors. He served time in custody, and then repeatedly violated the conditions of his parole and [postrelease community supervision] release. He was placed on summary and formal probation multiple times and violated the terms of his probation over and over. . . .

10

[Quillope's] crimes did not decrease in seriousness as he got older. [Quillope's] physical and sexual abuse of [Former Girlfriend] was extremely violent. He then violated criminal protective orders that were in place to protect her."

The trial court denied the motion to strike the prior strike, explaining that "based on his ongoing criminal conduct," Quillope "absolutely does" "fall[ ] within the spirit of the strike law." The trial court observed that there was a "very limited period of time in the last 25 years where [Quillope] was not either in custody or under supervision."

At the sentencing hearing, the trial court had before it a letter written by Quillope's parents. The letter stated, "During his youth, [Quillope] was a newspaper boy riding on a motor bike[.] [O]n his route, he got hit by a car and obtained a major head injury (subdural hematoma). Surgery (Craniotomy) was done to save his life. With God's blessings he recovered but might have mildly affected his cognitive functions." During his comments at the sentencing hearing, Quillope's father briefly reminded the trial court about "what happened" when Quillope was a "newspaper boy." Defense counsel did not attempt to submit any further information about the head injury or any enduring impact it had on Quillope. Defense counsel also did not mention the head injury in any respect during the sentencing hearing.

The trial court observed at the sentencing hearing that section 1385 was recently amended to specify that a sentencing enhancement should be dismissed in certain circumstances in the furtherance of justice. Specifically, effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to include subdivision (c). (Stats. 2021, ch. 721 § 1.) Under section 1385, subdivision (c)(1), "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that

11

enhancement is prohibited by any initiative statute." Under section 1385, subdivision (c)(2), in exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." As relevant here, one mitigating circumstance is that "[t]he current offense is connected to prior victimization or childhood trauma." (*Id*. at subd. (c)(2)(E).) In imposing sentence on Quillope, the trial court noted that "we don't have a lot of case law about how" the "factors listed in [subdivision] (c) of [section] 1385" "interplay with the strike laws." Therefore, out of an abundance of caution, the trial court proceeded to consider the mitigating circumstances identified in section 1385, subdivision (c)(2) in analyzing whether to dismiss Quillope's prior strike.

Referring to the head injury described by Quillope's parents, the trial court noted that "there is a history of childhood trauma based on the statements of his parents and the description of the injury." The trial court then went on to explain, "They have described something that likely caused some form of traumatic brain injury, which the court's trying to balance how much it can use its own experiences and training separate from what was presented in this case. [¶] In some ways the court doesn't feel it can necessarily draw on trainings it has received through the Judicial Council about the impacts of traumatic brain injury. Even if it could, the court's view is that circumstance likely affected Mr. Quillope's ability to control his impulses, which would be related to this offense." However, the trial court

12

explained that "even considering" that circumstance, "the court still would not strike the strike prior."

### 3. *Quillope Has Not Established an Abuse of Discretion*

Quillope argues that the trial court abused its discretion in ruling on the motion to strike the prior strike because it did not adequately consider his head injury.

Quillope does not argue that the mitigating circumstances in section 1385, subdivision (c)(2), such as whether "[t]he current offense is connected to prior victimization or childhood trauma" (*id*. at subd. (c)(2)(E)), govern the factors that a trial court must consider in deciding whether to strike a prior strike.[4]  Indeed, numerous courts have rejected such an argument.  (*People v. Burke* (2023) 89 Cal.App.5th 237, 244 [the provisions of § 1385, subd. (c) did not apply to the Three Strikes law because "[t]he plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement"]; *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2 (*Tilley*) [following *Burke*]; *People v. Olay* (2023) 98 Cal.App.5th 60, 69 ["section 1385, subdivision (c) does not apply to the Three Strikes law"]; *People v. Dain* (2024) 99 Cal.App.5th 399, 410–411 [following *Burke*], review granted May 29, 2024, S283924.)  Instead, Quillope argues more generally that the trial court was required to consider his head injury because "the question for the trial court was whether [Quillope] fell within the spirit of the [T]hree [S]trikes law, and in making that determination the court should consider the defendant's background."

---

[4]  We note that the People dispute that "brain injury sustained as a result of being hit by a car is 'childhood trauma' as defined in section 1385, subdivision (c)(6)(A)."  We need not, and do not, address that issue.

As Quillope characterizes the trial court's comments at the sentencing hearing, the trial court made a "concession that it had no experience in evaluating the impact of a serious brain injury." Quillope therefore seeks a remand to the trial court "to allow the court to fully understand the impact of such an injury as part of his background when considering" the motion strike the prior strike.

Without even addressing whether there might be any merit to Quillope's contention that the trial court was required to consider Quillope's head injury in deciding whether to strike the prior strike, we conclude that the argument has been forfeited because it was not developed at the sentencing hearing. As we have explained, the trial court specifically *did* consider all of the information that was presented on the subject of Quillope's head injury when deciding whether to strike the prior strike, but that information was limited to the short statement in the letter from Quillope's parents. Apart from that letter, Quillope failed to provide the trial court with any evidence or argument on the issue of his head injury. It is the defendant's burden to provide the trial court with evidence to support a motion to strike a prior strike. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.) "[U]nless the defendant presents evidence in support of his request, he forfeits his right to complain that the court's denial of *Romero* relief did not take into account that evidence." (*Id*. at p. 131.) Thus, Quillope "may not now complain that the trial court abused its discretion because it did not consider evidence that was never presented" (*id*. at p. 130), and he may not seek a remand to present evidence that he failed to present in the first instance at the sentencing hearing.

Based on the information presented at the sentencing hearing, the trial court was well within its discretion to deny the motion to strike the prior

14

strike, especially in light of Quillope's criminal history since incurring the strike in 1997. "[T]he circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack.' " (*Carmony, supra*, 33 Cal.4th at p. 378.) Due to his continuous history of criminal conduct, Quillope "appears to be 'an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed.' " (*Carmony*, at p. 379.) Quillope thus has not established that the trial court abused its discretion in denying the motion to strike the prior strike.

C. *Quillope Forfeited His Argument That the Trial Court Should Have Imposed a Lower Term Sentence Based on His Head Injury*

Quillope next contends that, based on his head injury, the trial court was required to consider a lower term sentence.

Quillope's argument is based on amendments to section 1170, subdivision (b), which became effective on January 1, 2022. (Stats. 2021, ch. 695, § 5.3.) Based on those amendments, a trial court may impose no greater than a middle term sentence unless it relies on aggravating factors that (with the exception of prior convictions in a certified record) have been found true beyond a reasonable doubt or stipulated to by the defendant. (§ 1170, subd. (b)(1)–(3).) As especially relevant here, newly enacted subdivision (b)(6) of section 1170 provides, in relevant part, that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of *the lower term* if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood

15

trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6), italics added.)

Quillope contends that his head injury constitutes "childhood trauma" within the meaning of section 1170, subdivision (b)(6)(A), and that the trial court was therefore required to impose a lower term sentence unless it determined that the interests of justice required otherwise. Quillope contends that the trial court erred in not applying section 1170, subdivision (b)(6)(A) in its sentencing analysis, and that "the case should be remanded to allow the presentation of evidence regarding [Quillope's] traumatic injury, and how that would impact the sentencing options." On remand, according to Quillope, the trial court should take the head injury into account to consider both "its discretion to impose the low term, *and . . .* the impact of [his] injuries on the consecutive sentences."[5] (Italics added.)

We reject Quillope's argument because it has been forfeited. "In general, the forfeiture rule applies in the context of sentencing as in other areas of criminal law. As a general rule neither party may initiate on appeal a claim that the trial court failed to make or articulate a " 'discretionary sentencing choice[ ]." ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) "[T]he

---

[5]     The remand that Quillope seeks encompasses both the trial court's discretion to impose a lower term sentence and its discretion to run the terms concurrently or consecutively. We note, however, that Quillope does not explain how his argument based on section 1170, subdivision (b)(6)(A) relates to the trial court's exercise of its discretion to impose concurrent or consecutive sentences. Absent an express statutory provision to the contrary, section 669 gives the trial court the discretion to impose either concurrent or consecutive terms for multiple convictions, and California Rules of Court, rule 4.425 provides a nonexhaustive list of factors that the trial court may consider in determining whether to impose consecutive or concurrent sentences. Quillope does not discuss that authority.

sentencing hearing is, in general, the proper time for a defendant to assert all available procedural and factual contentions relating to the trial court's sentencing choices." (*People v. Trujillo* (2015) 60 Cal.4th 850, 861.) "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id.* at p. 356.)

Here, Quillope did not argue in the trial court that he should receive a lower term sentence based on section 1170, subdivision (b)(6). He presented no evidence about the head injury referred to in his parents' letter, and he made no attempt to establish that the head injury constituted "childhood trauma" within the meaning of section 1170, subdivision (b)(6)(A) or that the head injury should impact the decision whether to impose consecutive sentences. Accordingly, Quillope has forfeited his appellate contention that the trial court erred in not considering whether it should impose a lower term sentence, or a concurrent sentence, based on the head injury. (See *Tilley*, *supra*, 92 Cal.App.5th at p. 778 [defendant forfeited his claim that the trial court should have selected the lower term based on § 1170, subd. (b)(6) because he did not raise it below].)

D.     *Quillope Forfeited His Argument That the Trial Court Erred in Considering His Statements at the Sentencing Hearing, Which the Trial Court Described as Demonstrating a Lack of Remorse*

Finally, Quillope argues that the trial court erred because it took into account a statement he made at the sentencing hearing, which the trial court described as "demonstrat[ing] a complete lack of remorse" and "complete . . . unwillingness to accept any sort of fault."

17

1. *Relevant Background*

At the beginning of the sentencing hearing, the trial court set forth a tentative sentence of 50 years (which it ended up adopting), including an upper term sentence on the principal count (count 5) and middle term sentences on counts 1, 2 and 3. Defense counsel then argued for a shorter sentence. Among other things, defense counsel argued, "So essentially we sit here before you, your Honor, and Mr. Quillope's essentially begging for mercy. Since he's been in custody, he's done a lot. He's done everything he could to try to better himself. He did all those classes, the cognitive behavior. . . . He's done everything he could to try to better himself . . . so when he does get out he can be a proper husband to his wife [C.J.] and find himself not in these types of circumstances ever again. [¶] I think that shows something on his behalf, that hopefully he is changing, and I hope the court would consider that in determining whatever your final decision is as far as his sentence."

C.J. spoke at the sentencing hearing, stating that she was "asking the court to have leniency on my husband." She explained that "[b]eing in our addiction is a struggle, which at this point in time in our lives we're not there anymore," and stated that she had "plans for [Quillope] when he comes home . . . to better himself and better us in general . . . whatever it takes just to make our marriage work."

Quillope also chose to address the trial court. Quillope made the following statement, in which he both blamed C.J. for lying about the incident and appeared to deny the 2011 sexual assault on Former Girlfriend, calling it a "fallacy":

"Your Honor, I love my wife. My graces were extended from the very beginning and continue on not only with this situation, and I've always done my best to provide for everything,

18

be it a place to live, a job opportunity, phone, food, clothing, conveniences, everything, all to make her happy.

"And that same intention, it went with our intimacy too. It was never selfish or forceful. It was consensual to nurture love and maintain peace and harmony in our home.

"I've done a thorough examination of my conscience, and as a man of Christian faith I seek that feeling of conviction that comes with any wrongdoing, but it eludes me. I find it hard to feel guilty for any type of loving my wife, and I know for a fact I did not do all those ugly things.

"Whatever was said was greatly exaggerated or a straight-out lie by a very angry and evil woman. Not only was she jealous of me communicating with my ex, she was aware of the fallacy that happened 11 years ago. She was also jealous of me and what I could provide, and all these strong feelings were enhanced not only by one drug but multiple mind-altering drugs. And, sadly, the truth did not prevail in this case.

"Later, when I asked about what was said, her answer to me was, 'I don't want to talk about it. I'm not evil like that anymore.' That is what I was dealing with at the time, a selfish and evil woman.

"Now, after all of this, my life's been ruined. I'm exhausted. I feel uncertain. I feel lost. But with my faith I stay hopeful, and I will continue to do my best, as always, to love and to live, and on behalf of myself and my wife, I'm sorry for this disgraceful situation.

"I humbly ask that the court see the injustice of this verdict and grant me leniency in this case. As husband and wife I believe we will do all that is necessary to change for the better and to prevent this from ever happening again."

In pronouncing sentence, the trial court referred to Quillope's statement. It explained, "The court had considered after [defense counsel's] arguments going with the low term on counts 2 and 3 and going with the

19

mid-term on count 5 as opposed to what the tentative was. Then Mr. Quillope demonstrated a complete lack of remorse, complete lack of any acceptance of responsibility and continued attack on [C.J.'s] character. And even with [C.J.] requesting leniency, the court finds that counters some leniency the court was considering, some additional leniency the court was considering granting based on that denial and complete lack of remorse, complete, even after a lengthy jury trial, unwillingness to accept any sort of fault." In addition, the trial court stated, "So you understand the math, Mr. Quillope, that was 10 years I was going to reduce your sentence by before you spoke. I want you to understand that. That's not for you to comment against, that was something [defense counsel] had made some fairly persuasive arguments that you completely undercut. [¶] So the court is going to impose the tentative."

2.    *Quillope's Contention That the Trial Court Erred Is Forfeited*

Quillope contends that the trial court erred in relying, at sentencing, on its conclusion that Quillope had shown "a complete lack of remorse."

The applicable line of case law holds that "[l]ack of remorse can be used to aggravate a sentence ' "unless the defendant has denied guilt *and* the evidence of guilt is conflicting." ' " (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1064, fn. 7; see also *People v. Key* (1984) 153 Cal.App.3d 888, 900–901 (*Key*).)[6] Quillope argues that the trial court erred under the applicable law

_____

[6]    A separate line of case law, which Quillope identifies, applies specifically in death penalty cases and delineates the circumstances in which a prosecutor may argue to the jury for a verdict of death based on the defendant's lack of remorse. (See, e.g., *People v. Coleman* (1969) 71 Cal.2d 1159, 1168–1169 ["any argument that failure to confess should be deemed evidence of lack of remorse is not permissible"]; *People v. Bemore* (2000) 22 Cal.4th 809, 854–855 [no impropriety occurred when "the prosecutor merely anticipated predictable defense argument urging sympathy for

because it "essentially added 10 years to the sentence after emphasizing [Quillope's] lack of remorse."

Quillope has forfeited the argument. To preserve the appellate challenge, defense counsel should have raised an objection, on legal grounds, when the trial court explained how it was using Quillope's statement to deny the leniency requested by C.J. and defense counsel. (*Scott, supra*, 9 Cal.4th at p. 353 [the forfeiture rule announced in *Scott* applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices," and "[i]ncluded in this category are cases in which the stated reasons allegedly do not apply to the particular case"].) Quillope may not raise the issue for the first time on appeal.

Moreover, even were we to consider Quillope's argument, it lacks merit because it is based on case law that disapproves using lack of remorse as an *aggravating* factor. (*Key, supra*, 153 Cal.App.3d at p. 900 [discussing circumstance in which "lack of remorse is not a valid reason to aggravate a sentence"].) That is not what occurred here. The trial court was clear about the aggravating factor it was using to impose an upper term sentence on count 5, i.e., that "[t]he defendant's prior convictions . . . are numerous or of increasing seriousness." (Cal. Rules of Court, rule 4.421(b)(2).) At the sentencing hearing, instead of identifying Quillope's lack of remorse to *aggravate* the tentative sentence, it relied on Quillope's comments in deciding to reject defense counsel's and C.J.'s requests that the court show leniency by

---

defendant and sought to negate its mitigating effect by highlighting defendant's apparent lack of concern for the murder victim" and did not "suggest that the absence of remorse was an independent factor in aggravation"].)

21

departing from its tentative sentence.[7]  Quillope has identified no authority that would prevent the trial court from taking into account a defendant's statements at a sentencing hearing in deciding whether to deviate from its tentative sentence by acceding to the pleas for leniency urged by defense counsel and the victim of the defendant's crimes.

DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.

---

[7]     Indeed, the trial court was plainly aware that it could not use lack of remorse as an aggravating factor because it specifically observed at a prior hearing that case law disapproves of using lack of remorse as an aggravating factor.  Specifically, citing *Key*, *supra*, 153 Cal.App.3d at pages 900 to 901, the trial court commented to the prosecutor at the bench trial on the aggravating factors, "So as to the lack of remorse factor there is a case . . . and this is before the renumbering of the Rules of Court, but it discusses where there is a denial, lack of remorse is not a valid basis to aggravate a sentence, and it distinguishes between cases where there is an admission of guilt and admission of the conduct and lack of remorse.  Are you aware of contrary case law or different argument?"  The prosecutor replied, "I am not, your Honor, and so with that information, I appreciate the court bringing that to my attention, I would go ahead and not move forward on the lack of remorse."

22